UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MONIQUE D. KENDRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-01109-TWP-DML |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Monique D. Kendrick ("Ms. Kendrick") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her applications for Social Security Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act ("the Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.  Ms. Kendrick has also filed a Motion to Consider New Evidence (Dkt. 18). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner and **DENIES** the Motion to Consider New Evidence.

## I.    BACKGROUND

### A.    Procedural History

On February 5, 2009, Ms. Kendrick filed applications for DIB and SSI, alleging a disability onset date of January 16, 2007.  Ms. Kendrick's applications were initially denied on June 22, 2009, and were also denied upon reconsideration on November 9, 2009.  Thereafter, Ms. Kendrick filed a request for a hearing.  A video hearing was held for Ms. Kendrick on September 28, 2011, before Administrative Law Judge Robert C. Asbille ("the ALJ").  The ALJ presided over the hearing from Evanston, Illinois, and Ms. Kendrick, represented by counsel and

appeared in Indianapolis, Indiana.   On October 28, 2011, the ALJ found that Ms. Kendrick was

not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act, and

thus denied Ms. Kendrick's applications.   Subsequently, Ms. Kendrick submitted a request for

review of the ALJ's decision, which was denied by the Appeals Council on June 14, 2012,

thereby rendering it the agency's final decision for the purposes of judicial review.   Ms.

Kendrick filed a civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.      Factual Background**

At the time of the ALJ's decision, Ms. Kendrick, an Indianapolis resident, was a forty-

two year-old woman with a master's degree in divinity.   She lived in an apartment, by herself,

and periodically took care of her mother, who lived in a nearby assisted living facility.   Medical

records show that Ms. Kendrick had a history of bipolar disorder, conversion disorder, panic

disorder, dependent personality disorder, and was described as having passive/aggressive traits

of narcissism.

Before the alleged onset date of disability, Ms. Kendrick worked as a part-time retail

clerk, a babysitter, a youth and family counselor, and a bereavement coordinator.   From April

2008 through September 2008, Ms. Kendrick unsuccessfully attempted to hold a position as a

medical receptionist.   She was fired because she was unable to perform her assigned tasks which,

according to Ms. Kendrick, she could not complete because she was overwhelmed with stress

and anxiety.

Ms. Kendrick maintains that she has suffered from non-epileptic seizures for the past ten

years, with episodes reoccurring approximately twice a month.   She reported that in the year

prior to the hearing, the seizures became more aggressive.   Seizure episodes can last as long as

fifteen minutes and are, according to Ms. Kendrick, temporarily debilitating.   Ms. Kendrick

reports that, during these seizures, her eyes become thick, she is unable to move her arms and legs, her communication becomes impaired, and she experiences spasms.  Although she is unable to move or talk during the episodes, Ms. Kendrick says that she remains conscious the entire time, which is a characteristic that distinguishes non-epileptic seizures from epileptic ones.  Dr. Laura Rosch ("Dr. Rosch"), a medical expert that testified at the hearing, described Ms. Kendrick's condition as psychogenic or pseudo seizures.   When the episode is over, Ms. Kendrick has to lie down and says that her speech and movement remain mechanical for approximately a day, before she is able to resume normal functionality.

Ms. Kendrick testified that she is currently unable to work because multitasking causes her to experience high levels of stress and anxiety.  She says that she is unable to concentrate for long periods of time and she is hyper sensitive to loud sounds, such as ringing telephones.  The non-epileptic seizures are typically induced by stress and anxiety, both of which are heightened while working. Ms. Kendrick also noted that merely looking for work, or furthering her education, tends to increase the frequency of the seizures.  When asked whether or not she was ordained, Ms. Kendrick answered that she was not, and cited her mental health issues as an obstacle to being ordained.

At the hearing, Dr. Rosch was asked whether Ms. Kendrick met the requirements for Listing 12.07, dealing with somatoform disorder.  Dr. Rosch, although not a psychologist, expressed some familiarity with psychological issues and indicated that one of the hallmarks of someone with somatoform disorder is their inability to care for themselves.  Vocational expert, Bill Newman ("the VE"), testified that a person with Ms. Kendrick's age, education, and work experience, who would be limited to work conditions that would not put her in danger if she lost consciousness, could not go back to past relevant work.  When asked what types of jobs a person

3

like Ms. Kendrick could perform, the VE testified that he believed she could be a garment sorter, a housekeeper, or a cafeteria attendant.

Nonetheless, the ALJ found that Ms. Kendrick was not disabled and Ms. Kendrick now appeals for review of the ALJ's decision.

## II.   DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits his ability to perform basic work activities) that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the

"maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 42 U.S.C. § 405(g). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176. Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.   THE ALJ'S DECISION

As an initial matter, the ALJ found that Ms. Kendrick met the insured status requirements of the Act through December 31, 2012.  Turning his attention to step one of the disability sequential analysis, the ALJ found that Ms. Kendrick had not engaged in substantial gainful activity since January 16, 2007, the alleged onset date.  The ALJ found that Ms. Kendrick attempted to work after the alleged disability onset date, but the attempt was unsuccessful.

At step two, the ALJ found that Ms. Kendrick had the following severe impairments: pseudo seizures; depression; anxiety; and somatoform disorder.  The ALJ also found that Ms. Kendrick had non-severe impairments, which included a left rotator cuff injury; right foot pain; right foot bunion; inflammatory condition of the eyes, with surgeries; gastro disease with no severe weight loss; eczema; hypertension; and carpel tunnel syndrome, with no surgeries.  The ALJ noted that none of the non-severe impairments would cause more than minimal limitation in Ms. Kendrick's ability to perform basic work activity.

At step three, the ALJ found that Ms. Kendrick did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ concluded that Ms. Kendrick had the RFC to perform a full range of work at all exceptional levels, but with limitations which included no unprotected heights and dangerous machinery; moderate deficiencies in concentration, persistence, and pace with the ability to understand, remember, and carry out; occasional contact with the general public, co-workers, and supervisors; ability to adapt to routine changes in the work environment; and ability to maintain regular attendance.

At step four, the ALJ determined that Ms. Kendrick is unable to perform any past relevant work.  For this determination, the ALJ relied on the vocational expert, who testified that

Ms. Kendrick's past relevant work was all semi-skilled, or skilled, and therefore she was unable to perform any of her past relevant work.

At step five, the ALJ found that considering Ms. Kendrick's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform; thus, Ms. Kendrick is not disabled for the purposes of the Act from her alleged onset date through the date of the ALJ's decision.

## IV.   DISCUSSION

Ms. Kendrick raises three issues on appeal that she claims are sufficient to warrant a remand of her case. First, Ms. Kendrick asserts that her impairments met or medically equaled the listings pertaining to stress and seizures. Dkt. 15 at 1-4, 6. Next, Ms. Kendrick contends that the evidence was not substantial to find that she could perform any other work in the economy. Dkt. 15 at 7. Finally, Ms. Kendrick argues that the Court should remand her case because she has new evidence to present in support of her disability at the time of the ALJ's decision. Dkt. 18 at 1. The Court finds substantial evidence supports the ALJ's finding that Ms. Kendrick's conditions did not meet or medically equal the listings in step three; the ALJ had substantial evidence to find that Ms. Kendrick could perform various other types of low skilled jobs in the economy; and the new evidence Ms. Kendrick claims to have is not sufficient to warrant a Sentence Six Remand. Thus, the final decision of the Commissioner is **AFFIRMED** and the Ms. Kendrick's Motion to Consider New Evidence (Dkt. 18) is **DENIED**.

**A.    Ms. Kendrick does not meet the requirements of Listings 11.03, 12.04, 12.06, or 12.07.**

Ms. Kendrick contends that the ALJ erred in determining that her non-epileptic seizures, depression, anxiety, and somatoform disorder did not, singly and in combination, meet or

medically equal the requirements of Listing 11.03 (non-epileptic seizures), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.07 (somatoform disorders).  Dkt. 15 at 6.

When a claimant contends that her impairment meets or medically equals the listed impairment requirements, the claimant has the burden of proving that her impairment meets the requirements.  *Rice v. Barnhart*, 384 F. 3d 363, 369 (7th Cir. 2004); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).  Finding that Ms. Kendrick's non-epileptic seizures met or medically equaled the Listing 11.03 requirement required a documented detailed description of a typical seizure pattern, including all associated phenomena, occurring more frequently than once weekly, in spite of at least three months of prescribed treatment, with altercation of awareness or significant interference with activity during the day.  Although Ms. Kendrick's typical seizure pattern seems adequately described in detail, the transcript shows that Ms. Kendrick's non-epileptic seizures occurred, at most, twice a month.  Tr. at 41.  Since Ms. Kendrick's non-epileptic seizures occurred less than required by the listing, the ALJ's finding on this matter was appropriate.

In making the finding that Ms. Kendrick did not meet the criteria for Listings 12.04, 12.6, and 12.07, the ALJ considered whether "paragraph B" was satisfied.  Tr. at 12-13.  To satisfy "paragraph B", the mental impairments must have resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

The ALJ found that Ms. Kendrick's ability to "drive, walk, dress/undress herself, perform her own hygiene, cook, shop for groceries, perform household chores, and assist in taking care of her mother in assisted living" were sufficient to find that Ms. Kendrick only had mild restrictions

in activities of daily living.  Tr. at 12.  With regard to social functioning, the ALJ found that Ms. Kendrick had difficulties, evidenced by reported family disagreements, but also noted that Ms. Kendrick was cooperative, has friends, and is active in social settings, such as in her church.  Tr. at 12.  He determined that, singly or in combination, Ms. Kendrick's difficulties with social functioning were only moderate.  *Id*.  The ALJ also found that Ms. Kendrick's difficulties with concentration, persistence, or pace were moderate. Tr. at 12.  Although Ms. Kendrick reported racing thoughts and difficulty maintaining concentration, the ALJ pointed to evidence that Ms. Kendrick performed routine work that was not considered stressful and she was able to carry out simple tasks without difficulty.  *Id*.  Finally, as for episodes of decompensation, the ALJ found that Ms. Kendrick experienced no episodes of decompensation of extended duration.  He noted that Ms. Kendrick had no psychiatric hospitalizations or emergency room visits related to psychiatric decompensation.  Tr. at 12.

The Court agrees with the Commissioner's position that the ALJ's decision was supported by substantial evidence, and Ms. Kendrick did not fulfill her burden of proof regarding the Listing requirements.  The ALJ has pointed to sufficient evidence in the record to support each of his findings.

**B.    The ALJ had substantial evidence to find that Ms. Kendrick could perform various other types of low skilled work in the economy.**

Next, Ms. Kendrick contends that, in light of age, education and prior work experience, she is unable to perform any other work in the economy.  Dkt. 15 at 7.  The ALJ found that there were various other types of low skilled jobs that Ms. Kendrick could perform.  Tr. at 22.  The ALJ based his finding on the testimony of the VE who, when asked a hypothetical question by the ALJ, affirmed that a person of Ms. Kendrick's age, education, working experience, and RFC could perform low skilled jobs such as a garment sorter, housekeeper, or cafeteria attendant.

9

Unlike in *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010), where the ALJ posed a hypothetical question without fully incorporating the claimant's RFC, but then used the RFC in his finding, the ALJ in this case fully incorporated the RFC by asking the VE to assume that the hypothetical individual had no exertional limitations, but was

> limited to unprotected heights, dangerous moving machinery, or any other type [of] work where seizure precautions would be necessary [;]… would have moderate deficiencies in concentration, persistence, and pace such that she would be able to understand, remember and carry out simple instructions [;]… would be limited to occasional contact of the general public, co-workers, and supervisors[;] … she would be able to adapt to routine changes in the work environment [;] and she would be able to maintain regular work attendance.

Tr. at 57. The Court finds that the hypothetical question posed by the ALJ adequately integrated all of the limitations assigned in the RFC and was, therefore, proper. Since a vocational expert's response to a hypothetical question is substantial evidence where the question accurately identifies limitations credibly supported by the record, *see Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007), the ALJ's reliance on this evidence to determine that Ms. Kendrick could perform various other types of low skilled work in the economy, was adequate.

Ms. Kendrick seems to further argue that the ALJ erroneously relied on Dr. Rosch's alleged testimony that "if the plaintiff was not providing care for her mother, she would have time to work a full-time job." Dkt. at 1-3. However, an examination of the transcript reveals that Dr. Rosch's statement was referring to her opinion that a person who has the ability to take care of another person, as in this case, does not meet the Listing 12.07 requirements (Somatoform disorder). Tr. at. 55. Dr. Rosch did not comment on Ms. Kendrick's ability to find another job in the economy. *Id*. Nonetheless, the ALJ did not rely on this testimony at all in his finding that Ms. Kendrick did not meet the Listing 12.07 requirements. Instead, he relied on

evidence from the hearing.  Tr. at 12-13.  Therefore, the ALJ's finding that Ms. Kendrick could

perform other jobs in the economy was appropriate.

**C.     Evidence submitted after the ALJ's decision is not sufficient to warrant a Sentence Six remand.**

Finally, Ms. Kendrick has submitted additional medical evidence to support her claims of

disability at the time of the ALJ's decision.  Dkt. 18 at 1.  A court of review cannot reverse an

ALJ's decision based on evidence that was not presented at the hearing.  *Micus v. Bowen*, 979

F.2d 602, 606 n.1 (7th Cir. 1992).  Rather, the court would have to remand the case.  A

reviewing court may remand a case "only upon a showing that there is new evidence which is

material and that there is good cause for the failure to incorporate such evidence into the record

in a prior proceeding."  42 U.S.C. § 405 (g).

The Commissioner contends that Ms. Kendrick has not met her burden of showing that a

remand pursuant to Sentence Six would be proper, and this Court agrees.  The evidence

presented by Ms. Kendrick is not "new" and, therefore, a remand would not be appropriate.  Ms.

Kendrick submitted documents that merely support disability claims already made before the

ALJ at the time of the hearing.  In *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003), the court

found that the reports submitted were not available to Jens before his hearing, but those reports

did not provide a new perspective on the information that was before the ALJ, thus they did not

meet the newness requirement.  Here, the ALJ's findings were based on the medical records,

expert testimony and Ms. Kendrick's own acknowledgement of her daily activity.  Dkt. 13-22.

The medical records submitted by Ms. Kendrick only support the same claims that were before

the ALJ and do not provide any additional perspective.

Furthermore, the evidence submitted for consideration would not be material to the ALJ's

decision.  "[M]ateriality means that there is a reasonable probability that the Commissioner

would have reached a different conclusion had the evidence been considered." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).  The evidence submitted by Ms. Kendrick includes reports that show that her psychogenic seizures were occurring only once or twice a month.  Dkt. 18 at 4, 13-56; Dkt. 19 at 2, 7.  This evidence would not be sufficient to change the ALJ's determination on Step 3 of the disability analysis.  The evidence also shows that Ms. Kendrick continued to perform extensive daily activity, further suggesting that Ms. Kendrick would not meet the listing requirements for somatoform disorder.  The Court finds that the evidence is not material because there is a strong probability that the ALJ would not change his decision based in the evidence Ms. Kendrick has now submitted.

## V.  CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of the Social Security Administration is **AFFIRMED**.  Ms. Kendrick's Motion to Consider New Evidence (Dkt. 18) is **DENIED**.

**SO ORDERED.**

Date: 09/26/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Monique D. Kendrick
3381 Tara Lane
Indianapolis, Indiana  46224

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov